# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 64

APRIL TERM, A.D. 2013

May 22, 2013

ERICK W. ESTERHOLDT as Trustee of
the Erick W. Esterholdt Revocable Trust
dated August 6, 2009, and JEANNE M.
ESTERHOLDT as Trustee of the Jeanne
M. Esterholdt Revocable Trust dated
August 6, 2009,

Appellants
(Plaintiffs),

v.

PACIFICORP, an Oregon corporation,

Appellee
(Defendant),

and

JASON THORNOCK,

Appellee
(Intervenor).

S-12-0164

*Appeal from the District Court of Lincoln County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellants:*
    Sharon M. Rose of The Rose Law Firm, P.C., Evanston, Wyoming.

*Representing Appellee PacifiCorp:*
    David G. Ditto of Associated Legal Group, LLC, Cheyenne, Wyoming.

*Representing Appellee Jason Thornock:*
    David M. Clark of Worrall & Greear, P.C., Worland, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**VOIGT, Justice.**

[¶1]     The effect of [the Marketable Title Act] on the recording act is astonishing.

Gary B. Conine & Daniel J. Morgan, *The Wyoming Marketable Title Act--A Revision of Real Property Law,* XVI Land & Water L. Rev. 181, 199 (1981).

[¶2]   Via a partial summary judgment, the district court held that the Wyoming Marketable Title Act (the Act), Wyo. Stat. Ann. §§ 34-10-101 *et seq.* (LexisNexis 2011), validated PacifiCorp's pole line and utility easement across the Esterholdts' property. The Esterholdts had filed an action seeking to have the easement declared invalid because it emanated from a "wild deed."[1] Thornock intervened as a potential user of PacifiCorp's power line. Several issues were determined by the district court, but the only issues before this Court in this appeal are based upon the Act. We will affirm.

## ISSUES

[¶3]   1.   Can a "wild deed" be the "root of title" under the Act?

2.   Is a "wild deed" an inherent defect in the chain of title?

## FACTS[2]

[¶4]   The Esterholdts own certain property in Lincoln County, Wyoming. The property was conveyed by warranty deed in 1946 from Continental Live Stock Company to J.A. Reed, who is Jeanne Esterholdt's grandfather.[3] In 1968, Reed conveyed the property to his daughter, Julianne Reed Biggane, and in 2006, the Biggane Trust transferred the property to the Esterholdts.

[¶5]   Prior to Reed's transfer of the property to his daughter in 1968, a Pole Line Easement across the property was granted to PacifiCorp's predecessor in interest, Utah Power & Light Company. That easement was dated March 1, 1967, and was recorded on July 21, 1967. The controversial feature of the easement grant is that Reed signed it as President of Continental Live Stock Company, rather than in his personal capacity, at a time that Continental Live Stock Company had no interest in the underlying land.

---

[1] A "wild deed" is "[a] recorded deed that is not in the chain of title, usu. because a previous instrument connected to the chain of title has not been recorded." *Black's Law Dictionary* 477 (9th ed. 2009). Such a deed has also been called a "maverick" deed. Conine & Morgan, *supra* ¶ 1, at 187. The more genteel definition is "a stray, accidental or   conveyance." *Exchange Nat'l Bank of Chicago v. Lawndale Nat'l Bank of Chicago*, 243 N.E.2d 193, 196 (Ill. 1968).

[2] The facts as stated herein are taken from an Agreed Upon Statement of the Case, signed by the parties.

[3] Reed signed the deed as President of Continental Live Stock Company.

1

## STANDARD OF REVIEW

[¶6]   Our standard for reviewing the grant of a motion for summary judgment is so well known that we need not repeat it here at length.  Suffice it to say that there are no disputed facts, with the issues being questions of statutory interpretation.  "Statutory interpretation is a question of law; therefore, our standard of review is *de novo*." *Anderson Highway Signs & Supply, Inc. v. Close*, 6 P.3d 123, 124 (Wyo. 2000).

## DISCUSSION

[¶7]   Before we analyze the Act, a little background about the statutory process for the recording of land conveyances is necessary.  First, it is clear that land conveyances are to be recorded only in the office of the county clerk in the county where the conveyed land lies.  Wyo. Stat. Ann. § 34-1-118 (LexisNexis 2011).  Upon recording, the county clerk is to endorse thereon "the day and hour on which it was filed for record."  Wyo. Stat. Ann. § 34-1-119 (LexisNexis 2011).  The failure to record a conveyance makes that conveyance void as against subsequent good faith purchasers who record their own conveyances.  Wyo. Stat. Ann. § 34-1-120 (LexisNexis 2011).  This most important feature of the recording act--recording as notice to subsequent purchasers--is detailed in Wyo. Stat. Ann. § 34-1-121(a) (LexisNexis 2011):

> (a)   Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of this chapter, shall be notice to and take precedence of any subsequent purchaser or purchasers from the time of the delivery of any instrument at the office of the county clerk, for record.

[¶8]   This Court has described Wyoming's recording act as a "race-notice statute." *Condos v. Trapp*, 717 P.2d 827, 831-32 (Wyo. 1986), *different result reached at Condos v. Trapp*, 739 P.2d 749 (Wyo. 1987).  Roughly translated, what that means is that the first person to record his or her deed, whatever the date of the deed, owns the land.  It is not a deed's signing, or its delivery, but its recording that gives others notice of its existence.  To that extent, race-notice means that the first one to the courthouse wins.  This is the legal theory--the foundation of the recording act--that is so profoundly affected by the Act.

[¶9]   With that introduction, we will quote at length the most pertinent parts of the Act:

### § 34-10-101.  Definitions.

(a)   As used in this act:

(i) "Marketable record title" means *a title of record, as indicated in W.S. 34-10-103 which operates to extinguish such interests and claims, existing prior to the effective date of the root of title*, as are stated in W.S. 34-10-105; [(emphasis added)]

. . . .

(v) "Root of title" means that conveyance or other title transaction *in the chain of title of a person, purporting to create the interest claimed by the person,* upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty (40) years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it was recorded[.] [(Emphasis added.)]

## § 34-10-102.  Purpose.

This act shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by *allowing persons to rely on a record chain of title as described in W.S. 34-10-103*, subject only to such limitations as appear in W.S. 34-10-104.[4]  [(Emphasis added.)]

## § 34-10-103.  Effect of unbroken chain of title; marketable record title.

Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty (40) years or more, shall be deemed to have a marketable record title to such interest subject only to the matters stated in W.S. 34-10-104. *A person shall be deemed to have such an unbroken chain of title when the official public records disclose a conveyance or other title transaction of record not less than forty (40) years at the*

---

[4] Conine & Morgan point out that the existence of exceptions within the Act defeats its purpose of facilitating title examinations because "[e]ven one exception to the operation of the Act requires a full title exam to insure the exception is not present somewhere in the chain of title."  Conine & Morgan, *supra* ¶ 1, at 185.

*time the marketability is to be determined, which conveyance or other title transaction purports to create the interest, either in the person claiming the interest, or some other person from whom, by one (1) or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest, so long as nothing appears of record, in either case, purporting to divest the claimant of his purported interest.* [(Emphasis added.)]

**§ 34-10-104. Effect of unbroken chain of title; exceptions.**

(a) *Marketable record title is subject to:*

(i) *All interests and defects which are inherent in the chain of record title.* However, a general reference in the chain, to easements, use restrictions or other interests created prior to the root of title is not sufficient to preserve them, unless specific identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest; [(emphasis added)]

(ii) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty (40) years or more, in accordance with W.S. 34-10-106;

(iii) The rights of any person arising from prescriptive use or period of adverse possession or user which was in whole or in part subsequent to the effective date of the root of title;

(iv) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started. However, the recording does not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of W.S. 34-10-105;

(v) The exceptions stated in W.S. 34-10-108(a) as to rights of reversioners in leases, as to apparent easements

4

and interests in the nature of easements, as to water rights, as to mineral interests and as to interests of the state of Wyoming and of the United States.

## § 34-10-105. Certain interests null and void.

Subject to matters stated in W.S. 34-10-104, *marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural, corporate, private or governmental, are null and void.* [(Emphasis added.)]

## § 34-10-106. Perpetuation of interest.

(a) Any person claiming an interest in land may preserve and keep effective his interest by filing for record during the forty (40) year period immediately following the effective date of the root of title of the person whose record title would otherwise by marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. No disability or lack of knowledge of any kind on the part of anyone shall suspend the running of the forty (40) year period. . . .

. . . .

(b) If the same record owner of any possessory interest in land has been in possession of the land continuously for a period of forty (40) years or more, during which period no title transaction with respect to the interest appears of record in his chain of title, and no notice has been filed by him or on his behalf as provided in subsection (a) of this section, and his possession continues to the time when marketability is being determined, the period of possession is equivalent to the filing

5

of the notice immediately preceding the termination of the forty (40) year period described in subsection (a) of this section.

Wyo. Stat. Ann. §§ 34-10-101, -106.

[¶10] We may summarize the operation of the Act as follows: If a marketable title controversy arises, the parties look back into the record to a period forty years prior thereto. Using that forty-year date as a starting point, the parties then look back to the last instrument previously recorded that can serve as a root of title for one of the parties under Wyo. Stat. Ann. § 34-10-101(a)(v). If the person relying upon that root of title can show an unbroken chain of title from the root of title to the present time of controversy, the purported title vests and extinguishes interests and claims existing prior to the effective date of the root of title.[5] Wyo. Stat. Ann. §§ 34-10-101(a)(i), (a)(v), -105.

[¶11] Succinctly stated, what happened in the instant case, which arose in 2010, is that the last instrument recorded in the chain of title to the easement prior to the forty-year "look back" period was the 1967 easement Reed granted to Utah Power & Light. That easement grant is PacifiCorp's root of title, subject to the issues raised herein. Because Reed signed the easement in his capacity as president of a company that had no ownership interest in the property, the easement is a "wild deed" as discussed above.

### Can a "wild deed" be the "root of title" under the Act?

[¶12] This is a question of first impression for this Court. Not surprisingly, courts across the nation have not been uniform in answering the question. Jay M. Zitter, Annotation, *Construction and Effect of "Marketable Record Title" Statutes*, 31 A.L.R.4th 11, 21-29 (1984). The district court agreed with the appellees and with the courts of Florida and Oklahoma that a wild deed suffices as a root of title. *See Mobbs v. City of Lehigh,* 655 P.2d 547, 550 (Okla. 1982) (void tax deed can be root of title); *City of Miami v. St. Joe Paper Co.*, 364 So.2d 439, 446-49 (Fla. 1978) (fraudulent deed in claimant's chain of title did not negate effect of the Act); and *Marshall v. Hollywood, Inc.*, 236 So.2d 114, 120 (Fla. 1970) (same).[6] The Illinois case relied upon both below and in this Court by the Esterholdts is *Exchange Nat'l Bank of Chicago v. Lawndale Nat'l Bank of Chicago*, 243 N.E.2d 193, 195-96 (Ill. 1968) (giving effect to a wild deed under the statute could result in stranger to title divesting record owner of title).

[¶13] Even without the conclusions of the district court and the guidance of the Florida and Oklahoma cases, we would be hard-pressed to apply our rules of statutory

---

[5] This is the "astonishing effect" of the Act upon the recording act.

[6] *Mobbs* distinguishes between a "void" tax deed, which is capable of serving as the root of title under the Act, and a forged deed which, being a felony, is deprived of legal significance. *Mobbs*, 655 P.2d at 552.

construction to the Act and find that a wild deed could not be a root of title. A full recitation of those rules would be cumbersome, and is not necessary here. Instead, we will repeat a few of the central guiding principles: (1) our primary purpose is to give effect to legislative intent; (2) we first make an inquiry into the ordinary and obvious meaning of the words of the statute; and (3) if a statute is unambiguous, we simply give effect to its plain meaning. *Union Pac. Res. Co. v. Dolenc*, 2004 WY 36, ¶ 13, 86 P.3d 1287, 1291 (Wyo. 2004).

[¶14] We note first that the statutory definition of "root of title" is "that conveyance or other title transaction in ***the chain of title of a person purporting to create the interest*** claimed by the person . . . ." (Emphasis added.) Wyo. Stat. Ann. § 34-10-101(a)(v). This definition clearly refers to an instrument in ***any person's*** chain of title that purports to create that person's claimed interest. The instrument must have been recorded at least forty years in the past.

[¶15] Next, Wyo. Stat. Ann. § 34-10-103 provides that ***any person*** meeting certain criteria not relevant or contested here, ***who has an unbroken chain of title of record*** to the claimed property interest for forty years or more, has a marketable chain of title under the Act. The facts set forth above, *see supra* ¶¶ 4, 5, show that PacifiCorp meets the requisite criteria, and that there has been nothing recorded to divest PacifiCorp of its interest in the easement. Wyo. Stat. Ann. § 34-10-104. Finally, the provisions of Wyo. Stat. Ann. § 34-10-105 make it clear that the establishment of a marketable record title under the Act renders "null and void" all interests whose existence "depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title."

[¶16] In the law review article mentioned above, two University of Wyoming College of Law professors recognized that wild deeds are given operative effect under the Act. Conine & Morgan, *supra* ¶ 1, at 198 ("[T]he Act is capable of . . . recognizing a new title, free of all prior claims and defects, in a grantee holding under a wild or maverick deed."). Conine & Morgan note that the Act is based upon the Model Marketable Title Act, with its essential provision being

> that if a person has an unbroken record chain of title for a specific number of years back to his "root of title" (i.e., the most recent transaction in his chain of title that has been of record for the specified length of time), all conflicting claims and interests which are based on a title transaction prior to that root of title are extinguished.

Conine & Morgan, *supra* ¶ 1, at 183.

The Act therefore does not require the claimant to be a bona fide purchaser, or that he or she has been in possession of the land. *Id*. at 190. Further, the Model Marketable Title Act was drafted to apply its benefits to any interest in land, including easements. *Id*. at 193 (citing Note, *The Indiana Marketable Title Act of 1963: A Survey*, 40 Ind. L.J. 21, 27 (1964) and Note, *The Minnesota Marketable Title Act: Analysis and Argument for Revision*, 53 Minn. L. Rev. 1004, 1015 (1969)).

[¶17] We cannot find anything in the Act that suggests that a wild deed cannot be the root of title for a contestant in a controversy under the Act. In fact, such an interpretation would render the methodology of the Act pointless. The Act does not contemplate simply reviewing the chain of title of the purported landowner back through time immemorial, with the purported landowner retaining title so long as there is nothing in his or her record chain of title interfering with that retention of title. Instead, the statutory methodology is to go back forty years from the date of the controversy, and then go back to the first root of title filed before that date. So long as the chain of title of the person holding that root of title is not disrupted, he or she holds marketable title. In that sense, the concept of the potential validity of a wild deed is written into the Act as if it appeared on its face.

### Is a "wild deed" an inherent defect in the chain of title?

[¶18] Wyo. Stat. Ann. § 34-10-104(a)(i) provides that marketable title (as that term is defined in the Act) is subject to "[a]ll interests and defects which are inherent in the chain of record title." Relying upon an Oklahoma case and a Florida case, the district court determined that a defect not appearing on the face of the deed was not an inherent defect. *See Allen v. Farmers Union Coop. Royalty Co.*, 538 P.2d 204, 209 (Okla. 1975) (mineral deed that recited grantor's interest both as "oil, gas, and other minerals," and as "oil, gas, coal, iron, and other minerals and mineral royalty" was inherently defective on its face and could not serve as root of title); and *Reid v. Bradshaw*, 302 So.2d 180, 183-84 (Fla. Dist. Ct. App. 1974) (conveyance of homestead without signature of both husband and wife was an inherent defect on face of deed, and could not serve as root of title).

[¶19] We have, for the most part, already answered this question with our answer to the first question. If a wild deed can, as we have found, serve as root of title in a chain of title under Wyo. Stat. Ann. § 34-10-101(a)(v), it goes without saying that it cannot, at the same time, be an inherent defect in that chain of title under Wyo. Stat. Ann. § 34-10-104(a)(i). The purpose of the Act is to facilitate land title transactions by putting a forty-year limit on title searches, plus the amount of time between the forty-year period and the root of title. Where there is no defect on the face of the root of title, and the "inherent defect" in the chain of title can only be determined by examining title records preceding that date, the purpose of the Act would be thwarted. In the present case, the defect in the easement, i.e., that Reed signed it on behalf of a company having no interest in the property, is only determinable by examining the title records preceding the date of the

easement. Therefore, it is not an inherent defect to which the root of title is subject under Wyo. Stat. Ann. § 34-10-104(a)(i).

[¶20] Clearly, this is an astonishing result. That a wild deed can extinguish an earlier valid ownership interest seems contrary to traditional concepts of real property law. However, the purpose of the Act is to simplify and facilitate land title transactions by allowing reliance on a 40-year record chain of title and extinguishing older interests. Wyo. Stat. Ann. § 34-10-102. *See also* Conine & Morgan, *supra* ¶ 1, at 185. Were we to ignore the plain language of the Act and interpret it as some courts have done to be inapplicable when a claim is based upon a wild deed, we would, as Conine & Morgan have said, undercut the operation and purpose of the entire Act.

> The legislature's intent was that the simplification of title be a paramount goal over the preservation of ancient property interests not properly retained under the Act. Consequently, the courts must take care in holding that the intent of the legislature did not extend that far in circumstances which might have appeared unjust prior to the passage of the Act. The Act is purposefully far-reaching and a narrow judicial interpretation can easily effect a judicial repeal of the legislation.

Conine & Morgan, *supra* ¶ 1, at 201 n.61.

## CONCLUSION

[¶21] A wild deed, as defined herein, may constitute the "root of title" under Wyo. Stat. Ann. § 34-10-101(a)(v), and a wild deed serving as a root of title that does not bear a defect "on its face" is not an "inherent defect" in the chain of record title under Wyo. Stat. Ann. § 34-10-104(a)(i). We affirm the district court.